Commonwealth, Appellant, *v.* Central Railroad
Company of New Jersey.

Argued November 26, 1947. Before MAXEY, C. J.,
LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

reargument refused
March 24, 1948.

*H. F. Stambaugh,* with him *Carl F. Chronister,* Deputy Attorney General, and *T. McKeen Chidsey,* Attorney General, for appellant.

*George H. Hafer,* with him *William H. Wood, George Ross Hull* and *Hull, Leiby & Metzger,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, January 5, 1948:

The Commonwealth of Pennsylvania has appealed from a decree of the court below striking off a judgment entered by the Attorney General against the Commonwealth in amount of $953.31, and in favor of Central Railroad Company of New Jersey, appellee. Central Railroad Company of New Jersey, pursuant to Section 1104 of the Fiscal Code, Act of 1929, P. L. 343, 72 PS Section 1104, appealed to the Court of Common Pleas of Dauphin County from the order of the Board of Finance and Revenue refusing a resettlement of tax liability. The day preceding the hearing, the Attorney General, without the knowledge or acquiescence of the taxpayer, filed what purported to be a confession of judgment. The court below made absolute a rule to show cause why the judgment so entered should not be stricken off for the reason that the Attorney General did not possess authority to enter the same.

Central Railroad Company of New Jersey, a foreign corporation, appellee, on May 25, 1939, made a settlement of gross receipts tax for a six months' period ending June 30, 1938. See Act of 1889, P. L. 420, Section 23, as amended by Act of 1937, P. L. 245, 72 PS Section 2181. The settlement, including tax on an amount representing gross receipts derived from interstate transportation of passengers, baggage and freight, was duly approved by the Department of the Auditor General on June 5, 1939. Appellee, on June 29, 1939, pursuant to Section 1102 of the Fiscal Code, supra, 72 PS Section 1102, presented its petition for resettlement to the Department of Revenue asserting that the above-mentioned portion of gross receipts was not subject to taxation. On March 20, 1940, said petition was refused. Appellee,

pursuant to Section 1103 of the Fiscal Code, supra, 72 PS 1103, filed its petition for review with the Board of Finance and Revenue on May 15, 1940, and on August 7, 1940, the petition was denied. Pursuant to Section 1104 of the Fiscal Code, supra, 72 PS 1104, appellee appealed to the Court of Common Pleas of Dauphin County, again asserting that the gross receipts from the interstate transportation were not taxable. On December 18, 1944, the Department of Justice issued an opinion advising the Secretary of Revenue that the gross receipts tax could not be applied to gross receipts from transportation from a point in Pennsylvania through an adjoining state to a point in Pennsylvania.

The appeal was listed for trial on October 23, 1945. On October 22, 1945, a Deputy Attorney General filed in the office of the prothonotary what purported to be a confession and consent to judgment against the Commonwealth and in favor of appellee in amount of $953.31, and directed the prothonotary to forthwith enter said judgment. On November 9, 1945, the taxpayer, appellee, filed its petition for a rule on the Commonwealth to show cause why said judgment should not be stricken off, alleging that: (1) the Attorney General was without authority to enter the judgment; and (2) appellee did not acquiesce in, consent to or ratify entry of the judgment. The rule was granted and on November 17, the Commonwealth filed its answer denying want of authority. This appeal is from the decree of the court below making the rule absolute and directing that the judgment be stricken off.

The Commonwealth contends that authority of the Attorney General to confess the money judgment in question is statutory as well as inherent in the common-law powers of an Attorney General. The statutes relied upon are contained in the Administrative Code, Act of 1929, P. L. 177, 71 PS Section 51, *et seq.* Section 206, 71 PS Section 66, designates the Attorney General as

head of the Department of Justice. Section 512, 71 PS Section 192, requires department heads to secure and follow advice from the Department of Justice. Section 704, 71 PS Section 244, designates the Attorney General as legal advisor of the Governor and chief law officer of the Commonwealth and provides, *inter alia:* "He shall exercise such powers and perform such duties as may now or hereafter be vested in or imposed upon him by the Constitution and laws of this Commonwealth." Sections 901, 902, and 903, 71 PS Sections 291, 292, and 293, provide that the Department of Justice shall "supervise, direct and control all of the legal business of every administrative department, board, and commission of the State Government" and represent the Commonwealth or any department, board or commission "in any litigation to which the Commonwealth or such department, board, commission, or officer, may be a party, or in which the Commonwealth or such department, board, commission, or officer, is permitted or required by law to intervene or interplead."

Examination of the foregoing sections of the Code and a review of the common-law powers of an Attorney General (*Commonwealth ex rel. Minerd v. Margiotti,* 325 Pa. 17, 21-23, 188 A. 524; 5 Am. Jur., page 231, *et seq.*) reveals no basis for the Commonwealth's contention. To the contrary, the completeness with which the legislature has, by Article XI of the Fiscal Code, supra, 72 PS Section 1101, *et seq.,* prescribed the method and means of effecting a settlement or resettlement by the Board of Finance and Revenue and for securing a final determination by the Court of Common Pleas of Dauphin County of a taxpayer's liability and the nature of confessions of judgment, both at common law and under our statutes, negative the existence of such authority.

Section 1104 of the Fiscal Code, supra, 72 PS Section 1104, provides a right of appeal to the Court of Common Pleas of Dauphin County. Appeals taken pur-

suant to this section shall be "hearings *de novo.*" Section 1108, 72 PS Section 1108, directs the manner in which and against whom a judgment shall be entered:

"Whenever the principal amount due upon a settlement, determination, resettlement, or redetermination, or *the principal amount* determined to be due upon a petition to the Board of Finance and Revenue, is less than the principal amount paid to the Department of Revenue, and the person, association, corporation . . . against whom such settlement has been made is satisfied therewith, or whenever the principal amount, *due upon the final judgment entered on any appeal,* is less than the principal amount paid to the Department of Revenue, the Department of Revenue shall *enter a credit in the amount of such difference* to the account of such person, association, corporation . . . Such credit may be used . . . in payment of any tax, bonus, or other claim which may be or become due from him, it, or them, to the Commonwealth . . ." (Italics supplied.)

It is apparent that the judgment, if any, shall be entered against the taxpayer for the amount of taxes properly owing to the Commonwealth and not against the Commonwealth for the difference between the amount due and the amount already paid.

The Commonwealth's contention is not only contrary to the clear intendment of the Fiscal Code but, if sustained, would effectively deprive a taxpayer of valuable rights and the Court of Common Pleas of Dauphin County of opportunity to exercise its jurisdiction to hear *de novo* a case of the Commonwealth against a taxpayer and to enter a final judgment determining a provision of an act of assembly unconstitutional or to hold an interpretation thereof by the Attorney General or Board of Finance and Revenue to be erroneous. Section 503, 72 P.S. Section 503, empowers the Board of Finance and Revenue to hear and determine petitions for a refund of taxes and requires that all such petitions shall be

filed with the Board within two years of the payment of the tax for which refund is sought or within two years of the settlement, whichever period last expires. Sub-paragraph (a).(4) provides an exception to the two-year period and assures to a taxpayer a period of five years for the filing of such petitions:

"When any tax or other money has been paid to the Commonwealth, under a provision of an Act of Assembly subsequently held by final judgment of a court of competent jurisdiction to be unconstitutional, or under an interpretation of such provision subsequently held by such court to be erroneous."

Appellant's contention that it is a party defendant when a taxpayer has appealed to the Court of Common Pleas of Dauphin County from the settlement of taxes against the taxpayer by the Commonwealth is grounded neither in fact nor in law. Admittedly, if taxpayer did not pay, the action would be by the Commonwealth against the taxpayer. It is none the less so when the taxpayer appeals under and pursuant to the provisions of the Fiscal Code. The language of Section 1108 of the Fiscal Code, supra, which provides "whenever the principal amount, due upon the final judgment entered on any appeal . . ." can only mean that the judgment is to be entered against the taxpayer for the principal amount due and that the Department of Revenue shall then "enter a credit . . . to the account of such . . . corporation . . ." in the amount of the difference between the sum due and amount paid. Any judgment entered must be in favor of the Commonwealth for the amount of tax due and not against the Commonwealth for the refund of over-payments by the taxpayer. Having regard to the Act of 1806, P. L. 558, 4 Sm. L. 326, 46 PS Section 156, requiring strict construction (*Thompson v. Morrison,* 352 Pa. 616, 44 A. 2d 55; *Bartron v. Northampton County,* 342 Pa. 163, 19 A. 2d 263), entry of a judgment by confession of the Common-

wealth against itself would be clearly inconsistent with and repugnant to the letter and spirit of the Fiscal Code. This Court cannot by judicial fiat effectively nullify clearly expressed legislative intention; to do so would constitute judicial legislation and an unconstitutional encroachment upon the legislative branch of our system of government.

There is no statutory or inherent power in the Attorney General to enter a money judgment against the Commonwealth in a case in which it is plaintiff and where the defendant has not agreed to such entry of judgment. The Act of 1806, P. L. 558, 4 Sm. L. 326, Section 8, 12 PS Section 738, relating to the entry of judgment by confession, provides for the entry of judgment where "on the application of any persons willing to become parties in an amicable suit . . . he [the prothonotary] shall enter judgment against the defendant for the amount expressed . . . as may be agreed upon by the parties . . ." Under this statute it is necessary that the parties have agreed to an amicable action, that such action has been begun and the defendant has signed a confession of judgment. These prerequisites are not present in the instant case and the statute, therefore, is inapplicable.

The Act of 1806, P. L. 334, 4 Sm. L. 270, Section 28, 12 PS Section 739, relates to the entry of judgment "on the application of any person, being the original *holder* . . . of a note, bond, or other instrument of writing, in which judgment is confessed, or containing a warrant for an attorney at law, or other person, to confess judgment, to enter judgment against the person or persons who executed the same, for the amount which from the face of the instrument may appear to be due . . ." (Italics supplied) This statute is equally inapplicable here for the reason that there is no *holder* of a note, bond or other instrument of writing containing a confession or a warrant of attorney to confess judgment executed *by the defendant*. There cannot be any appli-

cation of the holder of the judgment to have the same entered; there was no warrant of attorney authorizing the entry of judgment at the time and in the manner and form in which it was entered; and, there was nothing done by the taxpayer defendant in the way of an agreement. The judgment was entered by the plaintiff Commonwealth against itself without the consent of the defendant.

Authority for the entry of the instant judgment cannot be found in the common law. Blackstone in his Commentaries on the Law of England, Book III, pages 395-396, refers to four types of judgment: "First, where the facts are confessed by the parties, and the law determined by the court; as in case of judgment upon *demurrer:* secondly, where the law is admitted by the parties and the facts disputed; as in case of judgment on a *verdict:* thirdly, where both the fact and the law arising thereon are admitted by the defendant; which is the case of judgments by *confession* or *default:* or, lastly, where the plaintiff is convinced that either fact, or law, or both, are insufficient to support his action, and therefore abandons or withdraws his prosecution; which is the case in judgments upon a *non-suit* or *retratrix.*" Blackstone further discusses confession of judgments as follows (397): ". . . it is very usual, in order to strengthen a creditor's security, for the debtor to execute a warrant of attorney to some attorney named by the creditor, empowering him to confess a judgment by either of the ways just now mentioned (by *nihil dicit, cognovit actionem,* or *non sum informatus*) in an action of debt to be brought by the creditor against the debtor for the specific sum due: which judgment, when confessed, is absolutely complete and binding . . ." *Nihil dicit* is where a defendant suffers judgment to go against him by default for the reason that no plea is entered to the plaintiff's declaration. Confession or *cognovit actionem* acknowledges the plaintiff's demand to be

just. *Non sum informatus* is where defendant's attorney declares he has no instruction to answer to the plaintiff or say anything in defense of his client. In reality, there was but one judgment by confession at common law and that was judgment by *cognovit actionem*. A second is sometimes said to be a judgment by confession *relicta verificatione*. See 31 Am. Jur. Judgments, Section 465; 34 Corpus Juris 97. This is, however, defined as "a *cognovit actionem* accompanied by a withdrawal of the plea": Black's Law Dictionary.

It is clear, therefore, that at the common law a judgment by confession could be made only by a *defendant* who confessed the right and justice of a plaintiff's cause of action. Having determined that the Commonwealth was a party plaintiff and not a defendant, it is readily apparent that there is no justification or authority to be found in the common law for entry of the instant money judgment.

The judgment entered is without statutory authorization and could not have been properly entered at the common law. It is contrary to the intendment of the Fiscal Code, deprives the taxpayer of rights assured to it by the legislature, and deprives the Court of Common Pleas of Dauphin County of the jurisdiction to hear *de novo* a case of Commonwealth against a taxpayer and to determine the amount of tax properly due and owing to the Commonwealth. The court below properly concluded that:

"From any angle at which we may view the case, we find the rights of the appellant taxpayer completely protected by the provisions of the Fiscal Code which provide the exclusive and comprehensive method by which overpayment of taxes may be credited to the taxpayer; and we do not find any right in the Attorney General, either at common law or under any statute, to confess a money judgment against the Commonwealth."

Decree affirmed at appellant's costs.